EPSTEIN DRANGEL LLP
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff Tea Worldwide Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEA WORLDWIDE, INC. <br> *Plaintiff* <br><br> v. <br><br> JUNO PRODUCTS LLC; and SM LABS LLC <br> *Defendants* | CIVIL ACTION NO.: **25-cv-5737** <br><br> **COMPLAINT** <br><br> **Jury Trial Requested** |

Plaintiff Tea Worldwide, Inc. ("Tea Worldwide" or "Plaintiff"), a corporation organized under the laws of the State of Delaware with its principal place of business in Miami, Florida, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This action involves a claim for trademark infringement and federal unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)) (the "Action"). Plaintiff seeks injunctive relief, an accounting, compensatory damages, enhanced discretionary damages, attorneys' fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.    This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.    Personal jurisdiction exists over Defendant JUNO Products LLC ("JP") and Defendant SM Labs LLC ("SML") (collectively, "Defendants") in this judicial district pursuant to N.Y. C.P.L.R. § 301 (for SML), N.Y. C.P.L.R. § 302(a)(1) (for both Defendants) and/or N.Y. C.P.L.R. § 302(a)(3) (for both Defendants) because, upon information and belief, SML maintains offices in the State of New York; Defendants regularly conduct, transact, and/or solicit business in New York and in this judicial district, particularly via Defendants' Website (as defined *infra*); advertise, supply, and contract to supply goods (including, upon information and belief, Defendants' Products featuring the Infringing Marks, as those terms are defined *infra*) to consumers in New York and in this judicial district; and/or derive substantial revenue from their business transactions in New York and in this judicial district, and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' infringing actions caused injury to Plaintiff in New York and in this judicial district, such that Defendants should reasonably expect their actions to have consequences in New York and in this judicial district.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, one or more of Defendants maintain offices in this judicial district, Defendants conduct

business in this judicial district, a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and harm to Plaintiff has occurred in this district.

## THE PARTIES

5.      Plaintiff is a Delaware corporation, with an address of PMB 85223, 381 NE 191st Street, Miami, FL 33179.

6.      Upon information and belief, JP is a Delaware limited liability company, with offices located at 24 West Railroad Avenue, #280, Tenafly, New Jersey 07670.

7.      Upon information and belief, SML is a Delaware limited liability company, with offices located at c/o ML Management, 888 7th Avenue, 4th Floor, New York, New York 10106.

## GENERAL ALLEGATIONS

### Plaintiff and Its Tea Worldwide Mark

8.      Started in or about 2020, Tea Worldwide is the owner of the JUNI brand under which it designs, markets, and sells sparkling adaptogenic teas and related products under the JUNI trademark (collectively, the "Tea Worldwide Products" and "Tea Worldwide Mark", respectively).

9.      The Tea Worldwide Products were created by Jay Shetty—a *New York Times* bestselling author, motivational speaker, life coach, and host of the award-winning podcast "On Purpose"—and his wife Radhi Devlukia-Shetty—a *New York Times* bestselling cookbook author, plant-based cook, and host of the podcast "A Really Good Cry"—in light of their shared love of tea, and the symbolic nature of the same to each of them.

10.     The Tea Worldwide Products, which come in a variety of flavors (i.e., peach, raspberry, tropical, lemon, strawberry hibiscus, cherry lime, and yuzu pineapple, several of which are offered in decaffeinated versions), have zero added sugar, and contain a blend of "super 5" ingredients (i.e., green tea, ashwagandha, lion's mane, reishi mushroom, and acerola cherry), are

intended to boost consumers' minds, boost consumers' moods, and elevate consumers' overall wellness.

11.     The Tea Worldwide Products are sold directly to consumers via Tea Worldwide's website, available at drinkjuni.com, Amazon.com, as well as select retailers, such as Erewhon stores throughout California, and Target.

12.     Tea Worldwide markets and promotes the Tea Worldwide Products via its participation in trade expos, and social media, including on Instagram via its @drinkjuni handle, which has approximately 81,200 followers, among other places.

13.     Tea Worldwide also hires "brand ambassadors" to market and promote the Tea Worldwide Products on social media and elsewhere.

14.     Given the success of the JUNI brand and Tea Worldwide Products, the Tea Worldwide Mark and Tea Worldwide Products have been featured in various press publications, such as *Forbes*, *Los Angeles Times*, *SoCal*, *TrendHunter New Hope*, and *World Tea News*[1], among others.

---

[1]     *See, e.g.*, https://www.latimes.com/travel/story/2024-02-23/sunday-funday-jay-shetty-radhi-devlukia?fbclid=PAZXh0bgNhZW0CMTEAAadPoJ4FbqhKMx5g0YQAPb8Sv-8NL7gmMxUzPPOtXzKMkvNrLGqMjX2sddB55Q_aem_TEpcGNh9LcGsqDfGVAq7uA, https://www.socalmag.com/meet-juni-a-new-line-of-adaptogenic-sparkling-teas/?fbclid=PAZXh0bgNhZW0CMTEAAadF9dG8dEq2LUFcNqvmbRs7Lq40Cnxn0SqumtGeo5mIHERmOUlNAY0oFMruiw_aem_bPjXuWu2E4-FtH3seUYJCg, https://www.trendhunter.com/trends/adaptogenic-sparkling-tea1?fbclid=PAZXh0bgNhZW0CMTEAAacQCeMFTuGuHwSZlXlECVWOAQzbk6y21egsibjAdurpy0WR9cwfGw0lNiQzUg_aem_y2CvwtKYkbXVDUSG7nReeg, https://www.newhope.com/business-management/jay-shetty-explores-innovating-with-purpose-in-expo-east-keynote?fbclid=PAZXh0bgNhZW0CMTEAAaeCEKpXmLG7HeJa8M9KvAl8K6kaBE5En_wz7aB3A2cFr5JxoUV2mVH0AZc8Zg_aem_eavVRhAgnrdOx1wjgRUbRg, and https://www.worldteanews.com/whats-brewing/ready-drink-tea-beverage-line-joyo-goes-through-refresh-and-becomes-juni?fbclid=PAZXh0bgNhZW0CMTEAAaf2MneAPe1-bG5duVIXldfgcue3ApVUe19rfXos1UJ91_hnE5KRaIL8ulC1xw_aem_g0v4Q7Aq0rXzaHFYNgd4Bw.

15.    Tea Worldwide has gained significant common law trademark and other rights in its Tea Worldwide Mark and Tea Worldwide Products through its use, advertising and promotion of the same.

16.    Tea Worldwide purchased the rights to the JUNI brand and Tea Worldwide Mark in May, 2023, which included the assignment of U.S. Trademark Reg. No. 6356842 for JUNI in Classes 5 and 32 (the "Tea Worldwide Registration"). A true and correct copy of the Tea Worldwide Registration is attached hereto as **Exhibit A** and incorporated herein by reference.

17.    Since at least as early as the date set forth on the Tea Worldwide Registration, Plaintiff and its predecessor have continuously used the Tea Worldwide Mark in connection with non-alcoholic beverages, including the Tea Worldwide Products.

18.    Plaintiff has invested a substantial amount of time, effort, and money promoting its Tea Worldwide Mark. As a result of Plaintiff's efforts, the quality of the Tea Worldwide Products, the press and media coverage received, the word-of-mouth buzz generated by consumers, and volume of sales, the Tea Worldwide Mark has become prominently placed in the minds of the public. Members of the public have become familiar with the Tea Worldwide Mark, and have come to associate it exclusively with Plaintiff.

19.    As a result of such associations, Plaintiff and its Tea Worldwide Mark have acquired a valuable reputation and goodwill among the public.

20.    Plaintiff has gone to great lengths to protect its interests in in and to the Tea Worldwide Products and Tea Worldwide Mark. No one other than Plaintiff is authorized to use the Tea Worldwide Mark and/or manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Tea Worldwide Mark, or anything confusingly similar thereto, without the express written permission of Plaintiff.

**Defendants' Wrongful and Infringing Conduct**

21.     Tea Worldwide recently became aware of Defendants' actions, which vary and include using "JUNO" and "JUNO WATER" (the "Infringing Mark(s)") on or in connection with Defendants' manufacturing, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of competing beverage products—specifically, unflavored and flavored sparkling and still water in caffeinated and decaffeinated varieties —to U.S. consumers, including, upon information and belief, those located in the State of New York, through Defendants' website, available at https://morejuno.com ("Defendants' Products" and "Defendants' Website", respectively), and Amazon.com, among other places. True and correct screenshots of the homepage of Defendants' Website are attached hereto as **Exhibit B** and incorporated herein by reference.

22.     A side-by-side comparison of examples of Plaintiff's Tea Worldwide Products to examples of Defendants' Products featuring one or more of the Infringing Marks—both of which are offered in 12 ounce cans—appears below:

| **Examples of Tea Worldwide Products** | **Examples of Defendants' Products** |
|---|---|
|  |  |



23.    Plaintiff and Defendants respectively each promote that the Tea Worldwide Products and the flavored varieties of Defendants' Products contain five (5) calories per can. By way of example, below is a side-by-side of images from Plaintiff's and Defendants' respective storefronts on Amazon.com wherein they each feature the calorie content of their products, and promote the clean, energizing nature of their ingredients:





24.    Similar to the Tea Worldwide Products, Defendants' Products are advertised as having various health benefits and natural ingredients, with Defendants' Products with caffeine (their ROCKET products), which are infused with "green coffee", marketed as "enabling a smoother, more even flow of energy"; their CRUISE products marketed as "ensuring all-day hydration and a balance of essential vitamins."; and their DESCEND products promoted as containing "calming ingredients help guide you into serene relaxation".[2]

25.    Upon information and belief, Defendants market and promote Defendants' Products via social media, including on Instagram via their @more.juno handle, which has approximately 21,300 followers, among other places.

26.    Upon information and belief, like Plaintiff, Defendants also hire "brand ambassadors" to market and promote Defendants' Products on social media and elsewhere.

27.    In fact, both Plaintiff and Defendants invite others to become brand ambassadors via their respective websites, as exemplified by the below screenshots:

---

[2] *See* https://morejuno.com/pages/our-story.



28.    In an effort to further confuse consumers, upon information and belief, Defendants have bid on and/or purchased the Tea Worldwide Mark as a keyword on Google, among other search engines. By way of example, a search for "Juni Beverages" yields the following sponsored results:



29.     Despite Plaintiff's well-established prior rights, SML applied to register the Infringing Marks in the United States by filing the following: U.S. Trademark Application Serial No. 98375678 for "JUNO" in Classes 5, 29, and 30; U.S. Trademark Application Ser. No. 98091903 for "JUNO" in Classes 5 and 32, and U.S. Trademark Application Ser. No. 98091899 for "JUNO WATER" in Classes 5 and 32 (the "Infringing Applications").

30.     In light of Defendants' infringing and illegal actions, as set forth herein, on or about October 11, 2024 (the "C&D"), Plaintiff sent SML a cease and desist letter wherein it explicitly placed Defendants on notice of Plaintiff's rights, and the infringing nature of Defendants' conduct. A true and correct copy of the C&D is attached hereto as **Exhibit C** and incorporated herein by reference.

31.     After Plaintiff sent the C&D, the parties, through their counsel, engaged in back and forth correspondence; however, the parties have been unable to reach any resolution.

32.     On or about December 16, 2024, Plaintiff then filed an opposition against two (2) of the Infringing Applications (i.e., U.S. Trademark Application Serial Nos. 98091903 and 98091899) based on a likelihood of confusion (Opposition No. 91295713) with the Tea Worldwide

Mark (the "Opposition"), which remains pending. A true and correct copy of the Notice of Opposition is attached hereto as **Exhibit D** and incorporated herein by reference.

33.    Thereafter, on or about April 17, 2025, SML filed an unmeritorious Petition to Cancel Plaintiff's Tea Worldwide Mark (Cancellation No. 92088115) (the "Cancellation"). A true and correct copy of the Petition for Cancellation is attached hereto as **Exhibit E** and incorporated herein by reference.

34.    Despite having full knowledge of Plaintiff and its Tea Worldwide Mark, Defendants have continued using the Infringing Marks.

35.    Neither Plaintiff nor any of Plaintiff's authorized agents have consented to Defendants' use of the Tea Worldwide Mark, nor have they consented to Defendants' use of any identical or confusingly similar marks.

36.    Upon information and belief, and as evidenced by Defendants' continued infringing conduct after receiving the C&D and the institution of the Opposition, Defendants have been engaging in the illegal and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Tea Worldwide Mark and Tea Worldwide Products.

37.    By Defendants' use of the Infringing Marks, as alleged herein, which began long after Plaintiff's adoption and use of its Tea Worldwide Mark, Defendants have violated Plaintiff's exclusive rights in its Tea Worldwide Mark.

38.    Defendants' use of the Infringing Marks has caused, and will continue to cause, confusion, mistake, economic loss and has, and will continue to deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Products and/or Defendants'

business, thereby causing consumers to erroneously believe that Defendants' Products and/or Defendants' business(es) are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

39.    In engaging in these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: infringed the Tea Worldwide Mark, and committed unfair competition.

40.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Infringement)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

41.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

42.    Plaintiff has continuously used the Tea Worldwide Mark in commerce since at least as early as the date set forth on the Tea Worldwide Registration.

43.    Plaintiff, as the owner of the Tea Worldwide Mark and Tea Worldwide Registration, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

44.    Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the Tea Worldwide Mark.

45.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Tea Worldwide Mark, to use the Tea Worldwide Mark and/or Infringing Marks in connection with the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Products, or otherwise.

46.    Defendants' egregious and intentional use of the Infringing Marks in commerce on or in connection with the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of Defendants' Products, and is likely to deceive the public into believing that Defendants' Products are Plaintiff's Tea Worldwide Products or are otherwise associated with, or authorized by, Plaintiff.

47.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Tea Worldwide Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

48.    Defendants' continued, knowing, and intentional use of the Infringing Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Tea Worldwide Mark in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

49.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Tea Worldwide Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Tea Worldwide Mark.

50.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Federal Unfair Competition: False Designation of Origin, Passing Off)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

51.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     Plaintiff, as the owner of all common law right, title, and interest in and to the Tea Worldwide Mark, has standing to maintain an action for an action for unfair competition under the Lanham Act § 43(a) (15 U.S.C. § 1125).

53.     The Tea Worldwide Mark is inherently distinctive and/or has acquired distinctiveness.

54.     Defendants knowingly and willfully used Infringing Marks in connection with the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Products, including on Defendants' Website, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacture, advertisement, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' Products are Tea Worldwide Products or related products, and/or that Defendants' Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of Defendants' Products, and/or Defendants' business, allowing Defendants to capitalize on the goodwill

associated with, and the consumer recognition of, the Tea Worldwide Mark, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

55.     By using the Infringing Marks that are confusingly similar to the Tea Worldwide Mark, Defendants have traded off the extensive goodwill of Plaintiff and its Tea Worldwide Mark, and did in fact induce, and intends to, and will continue to induce customers to purchase Defendants' Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Tea Worldwide Products, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

56.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of the Infringing Marks would cause confusion, mistake or deception among purchasers, users and the public.

57.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Tea Worldwide Products, and Tea Worldwide Mark.

58.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Tea Worldwide Products and by depriving Plaintiff of the value of its Tea Worldwide Mark as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the same.

59.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief against Defendants, jointly and severally:

A.    An award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate for Defendants' willful trademark infringement of Plaintiff's Tea Worldwide Mark, and unfair competition under 15 U.S.C. §1125(a);

B.    An order that registration of the Applications be refused by the United States Patent and Trademark Office;

C.    An order that the Cancellation be dismissed with prejudice;

D.    A preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.    directly or indirectly infringing in any manner any of Plaintiff's trademarks (whether now in existence or hereafter created) including, without limitation, the Tea Worldwide Mark;

      ii.    using the Infringing Marks or any of Plaintiff's trademarks (whether now in

existence or hereafter created) including, without limitation, the Tea Worldwide Mark, or any other marks or designations confusingly similar thereto, in connection with Defendants' manufacture, importation, exportation, advertisement, marketing, promotion, distribution, display, offering for sale, and/or sale of Defendants' Products or any related products;

iii. using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

iv. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein;

v. engaging in any other actions that constitute unfair competition with Plaintiff;

vi. engaging in any other act in derogation of Plaintiff's rights;

vii. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this

Action;

    viii.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (vii) above;

E.      An order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all packaging, labels, tags, advertising, and promotional materials and any other materials in the possession, custody or control of Defendants that bear any marks that are confusingly similar to Plaintiff's Tea Worldwide Mark, including the Infringing Marks, pursuant to 15 U.S.C. § 1118;

F.      An order from the Court that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their use of the Infringing Marks, as described herein, including prejudgment interest;

G.      An order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession, which rightfully belong to Plaintiff;

H.      An award of exemplary or punitive damages in an amount to be determined by the Court;

I.      Plaintiff's reasonable attorneys' fees;

J.      All costs of suit; and

K.      Such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated:  July 11, 2025                    Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:     /S Kerry B.  Brownlee
          Kerry B. Brownlee (KB 0823)
          kbrownlee@ipcounselors.com
          Jason M. Drangel (JD 7204)
          jdrangel@ipcounselors.com
          60 East 42nd Street, Suite 1250
          New York, NY 10165
          Telephone: (212) 292-5390
          Facsimile: (212) 292-5391
          *Attorneys for Plaintiff*
          *Tea Worldwide Inc.*